**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

SHIRLEY WEIMER,

          Defendant.

No. C 13-3035-001-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING INTEREST
ON RESTITUTION ORDER**

---

## TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................. 2

II.    **BACKGROUND** ................................................................. 4
    A.    *Facts* ............................................................................ 4
    B.    *Procedure and Restitution Claims* ............................... 6

III.   **DISCUSSION** .................................................................... 7
    A.    *Statutory Authority to Order Restitution* ..................... 7
    B.    *Standard for Determining Whether Restitution is Owed* ................. 14
          1.    *Is State Farm a Victim?* ................................. 14
          2.    *What is the Full Amount of State Farm's Loss?* .................. 15
    C.    *Imposition of Pre- and Postjudgment Interest* ............................. 20
          1.    *Pre- and Postjudgment Interest under the VWPA* ............. 20
          2.    *Pre- and Postjudgment Interest under the MVRA* ................ 22
          3.    *Analysis* ................................................... 27
    D.    *Calculating the Appropriate Interest Award* ................... 28
          1.    *The Amount Subject to the Award of Interest* ...................... 28
          2.    *Date From Which to Calculate Interest* ............................. 28
          3.    *The Rate At Which To Calculate Interest* ......................... 29
    E.    *Payment Schedule* ................................................... 31

IV.   **CONCLUSION** ................................................................. 33

# I.    INTRODUCTION

Like a good neighbor, State Farm was there for the defendant,[1] Shirley Weimer (Weimer), in March of 2009.  After Weimer filed an insurance claim for a fire that burned down her rental property, "the good neighbor," State Farm, distributed $78,593.25 to Weimer for the fire-related losses.  Unbeknownst to State Farm at that time, Weimer, the "bad neighbor," had spearheaded a criminal arson conspiracy to burn down the rental property and defraud her "good neighbor" of the insurance proceeds.

On April 1, 2014, Weimer pleaded guilty to Count 1 of her Indictment, Conspiracy to Use Fire to Commit Wire Fraud, 18 U.S.C. § 1343, pursuant to a binding plea agreement.  *See* FED. R. CRIM. P. 11(c)(1)(C).  Per this plea agreement Weimer was sentenced on November 25, 2014, to 120 months imprisonment and "complete restitution."[2]  Because the parties did not address what the term "complete restitution" means – I do.  The question I address is whether one of the Nation's largest insurance companies, "the good neighbor," is entitled to pre- and postjudgment interest on restitution from Weimer, "the bad neighbor"?[3]  More precisely, are both pre- and

---

[1] State Farm Insurance Company (State Farm) prides itself on being a "Good Neighbor" and "being there" for its customers.  *See* Learn More About State Farm, https://www.statefarm.com/about-us (last visited Nov. 24, 2014).  The State Farm jingle on the company's television advertisement is "Like a good neighbor, State Farm is there."  *See* State Farm "Like a Good Neighbor" Jingle Ad -- "Can I get a hot tub?!?", https://www.youtube.com/watch?v=OB6r2Wi0E98 (last visited Nov. 24, 2014).

[2] Weimer was previously scheduled to appear before me on November 3, 2014, for sentencing.  Weimer failed to appear due to a medical emergency.  Weimer's counsel appeared on her behalf at the prior hearing.  Because Weimer did not notify the Court or her counsel in advance of her failure to appear, I issued an arrest warrant, and Weimer's sentencing hearing was rescheduled.

[3] By "prejudgment interest," I mean interest that accrued on State Farm's loss prior to Weimer's sentencing.  By "postjudgment interest," I mean interest that will accrue on State Farm's loss after Weimer's sentencing.

postjudgment interest on restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3663A–3664, allowable when the MVRA is silent on this question?

Further complicating the above questions is the fact that the parties' Rule 11(c)(1)(C) binding plea agreement, which I accepted, does not specifically address the issue of whether to include interest on the restitution. Rather, her plea agreement provides for "full restitution," and "[c]omplete restitution shall be due and payable at or before the time of sentencing." In addition, citing to 18 U.S.C. § 3663A, Weimer's PSIR indicates that restitution is "mandatory" and provides an "Amount of Loss" of $78,593.25, but the PSIR does not include an interest calculation.

Below, I initially discuss the undisputed facts from the record, following which I summarize the legal proceedings that occurred before Weimer's sentencing hearing. After, I explain the statutory authority of federal district courts to order restitution based on the MVRA, and its predecessor, the Victim and Witness Protection Act (VWPA). Then I explain the two-step standard courts apply to determine whether restitution should be ordered, and why I am permitted to award restitution to State Farm. After discussing relevant case law addressing the issue of the imposition of pre- and postjudgment interest, I give my rationale for including prejudgment interest in this case. That discussion is followed by an explanation of the calculations for the appropriate prejudgment interest amount to be awarded to State Farm based on the Treasury Bill rate. Ultimately, pursuant to the MVRA, I award restitution in an amount that includes pre- and postjudgment

interest. The live victim impact statement in this case shed light on the far-reaching social and economic impacts of insurance fraud.[4]

## II.    BACKGROUND

### A. Facts

The facts below are undisputed and taken from the sentencing record. Approximately one week before March 2, 2009, the defendant, Weimer, approached Lisa Young (Young), who rented a home from Weimer, with a proposition. Weimer "offered Young $10,000 to burn the home [she rented from Weimer] down so she (the defendant) could defraud State Farm Insurance out of money." The rental home was insured against "accidental fire" by State Farm. After some consideration, Young agreed to partake in Weimer's scheme. Following her conversation with Weimer, Young recruited her ex-husband, Melvin Young, to assist her in the conspiracy. Young promised Melvin that she would split the agreed upon $10,000 with him.

On March 1, 2009, Young; her daughter, Ashley Straight; and Melvin entered the residence to remove clothes and animals. After Young and Straight exited the home, Melvin proved to be a rotten arsonist: "Melvin unsuccessfully attempted to burn down the residence by setting the living room curtains on fire with a newspaper." Aside from

---

[4] A representative from State Farm appeared and gave a powerful and informative victim impact statement at the sentencing today. He reminded all of us that residential arson is a very dangerous crime that poses a serious risk of injury to neighbors, firefighters, other first responders, insurance investigators and claim adjusters, and others. He also echoed what I have always thought about arson, it is a crime of pure greed that has real victims. All consumers of insurance pay what the State Farm representative referred to as a "fraud" penalty—the extra cost of insurance due to fraudsters like Ms. Weimer—that experts estimate is over ten percent of insurance premiums nationwide. I surmise this is a multi-billion dollar problem.

"smoldering throughout areas of the home," the fire never caught on to the rest of the residence.

That same day, Young, undeterred, recruited another potential firebug, her son, Gerald Straight, with the same proposal: if Gerald set the house on fire, Young would pay him half of the $10,000 she was promised by Weimer. Gerald accepted Young's offer. Young's children—Ashley and Gerald—drove to the residence "[s]ometime between midnight and 4:00 a.m. on March 2, 2009." Ashley and Gerald entered the residence, and "Gerald lit blankets on fire near an electrical outlet in his mother's bedroom." The burners returned sometime later to the scene to witness their incendiary fire. Subsequently, the two arsonists drove to their grandmother's residence, where all three (*i.e.*, Young, Ashley, and Gerald) were staying the night. Once there, the children informed Young that the home was on fire.

At 8:00 a.m. on March 2, 2009, Young called the defendant to confirm that the home was successfully set on fire. Later that morning, Weimer paid Young $1,000 in cash, and Weimer promised the remaining balance to Young once Weimer collected the insurance proceeds from State Farm. Keeping her word, Young gave Gerald $500 from the $1,000 down payment.

Weimer wasted no time submitting an insurance claim to State Farm; she "claim[ed] the fire was accidental" on the day the home was set on fire. Once the insurance claim was received, State Farm entered the claim into their computer network in Phoenix, Arizona. The claim was assessed by a State Farm "claims adjuster" in Lincoln, Nebraska, who called Weimer to talk about the submitted insurance claim. During the phone call, Weimer fraudulently claimed that the fire that destroyed her home was accidental. From March 30, 2009 to February 21, 2011, Weimer received four checks from State Farm, totaling $78,593.25, for the fire-related losses: (1) $33,700.53

on March 30, 2009; (2) $3,900 on May 8, 2009; (3) $3,900 on May 26, 2010; and (4) $37,092.72 on February 21, 2011.

### B. Procedure and Restitution Claims

On April 1, 2014, Weimer appeared before United States Magistrate Judge Leonard Strand to plead guilty to Count 1 of her eight-count Indictment. Count 1 charged Conspiracy to Use Fire to Commit Wire Fraud, in violation of 18 U.S.C. § 1343. Judge Strand recommended that I formally accept Weimer's plea pursuant to a binding plea agreement with the government. *See* FED. R. CRIM. P. 11(c)(1)(C).

In Weimer's plea agreement, the parties reached a general agreement as to restitution. Paragraph 23 of Weimer's plea agreement, initialed by Weimer, provides:

> Defendant agrees defendant will be required to pay full restitution to all victims of the offense(s) including relevant conduct victims. Defendant further understands the amount of loss sustained by each victim will be determined during the course of preparation of the presentence investigation report . . . Defendant understands full restitution will be ordered regardless of defendant's financial resources . . . Complete restitution shall be due and payable at or before the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by set-off of program payments, execution on exempt and non-exempt property and/or any other means the United States deems appropriate . . .

Notably, the parties did not stipulate to a precise amount of restitution in Weimer's plea agreement.

The only place where an exact amount for restitution is suggested to me is in the PSIR. The PSIR cites to the MVRA and states that "[r]estitution is mandatory in this case." The PSIR identifies the "Amount of Loss" caused by Weimer's criminal conduct in Count 1 to be $78,593.25. No objections were filed to this amount.

6

### III. DISCUSSION

#### A. Statutory Authority to Order Restitution

As the Eighth Circuit Court of Appeals has explained, federal courts do not have inherent authority to award restitution: "'[F]ederal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute.'" *United States v. Balentine*, 569 F.3d 801, 802 (8th Cir. 2009) (citation omitted). The federal courts' authority to order restitution is provided by two statutes: the VWPA, enacted on October 12, 1982, and the MVRA, enacted on April 24, 1996.

The prior restitution statute, the VWPA, 18 U.S.C. § 3663, governs orders of restitution for offenses committed prior to April 24, 1996. *United States v. Bussell*, 414 F.3d 1048, 1061 (9th Cir. 2005). Therefore, the VWPA does not apply here because the unlawful activity of Weimer began approximately one week before March 2, 2009 or February 23, 2009.[5] Under the VWPA, courts were given *discretion* in ordering restitution, and courts were *required to consider a defendant's economic circumstances*. *See United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

In contrast to the VWPA, under the MVRA, restitution is *mandatory* for certain specified offenses, including "an offense against property under this title [Title 18], . . . including any offense committed by fraud or deceit." *See United States v. Miell*, 744 F.Supp.2d 961, 965 (N.D. Iowa 2010) (citing 18 U.S.C. § 3663A(a)(1), (c)(1)). The defendant's conspiracy to use fire to commit wire fraud, under 18 U.S.C. § 1343, charged in Count 1 of the Indictment in this case, plainly falls within the mandatory restitution requirement of the MVRA. This is because the charged offense falls under Title 18,

---

[5] The PSIR makes clear that on March 2, 2009, Weimer submitted an insurance claim to State Farm. Approximately one week before March 2, 2009, Weimer approached Lisa Young with the idea of defrauding the victim.

Weimer committed a conspiracy to use fire to commit wire fraud, and Weimer's crime caused one identifiable victim to suffer a pecuniary loss. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii), (B) (noting that a person convicted of or who pleaded guilty to charges for "an offense against property" under Title 18 "in which an identifiable victim or victims has suffered a . . . pecuniary loss" be ordered to make restitution to the victim).

In addition, pursuant to the MVRA, the defendant must pay the full amount of the victim's losses, and the amount of loss is determined by the district court *without regard to the defendant's ability to pay*. *See* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."); *see also United States v. Ruff*, 420 F.3d 772, 774 (8th Cir. 2005) ("In ordering restitution pursuant to the MVRA, a district court must order restitution in full without considering the defendant's economic circumstances."). Aside from the MVRA's mandatory restitution for certain crimes and requisite disregard of the economic circumstances of the defendant, "[The VWPA and MVRA] are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." *Gordon*, 393 F.3d at 1048; *see also United States v. Stout*, 597 F.Supp.2d 963, 966 (S.D. Iowa 2009) (noting that "[b]ecause of the nearly identical language in the two Acts, case law interpreting the VWPA is often instructive to understanding the MVRA.") (citation omitted).

After reviewing the legislative history of the MVRA, one gleans that the MVRA's purpose is

> [T]o ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due. It is also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society. Finally, this legislation is needed to replace

an existing patchwork of different rules governing orders of
restitution under various Federal criminal statutes with one
consistent procedure.

S. Rep. No. 104–179, 104th Cong., 1st Sess. 1995, 1996 U.S.C.C.A.N. 924, 1995 WL
731704 (Leg. His.). Under the MVRA, "Congress intended that restitution be a
compensatory remedy from the victim's perspective." *United States v. Lange*, 592 F.3d
902, 907 (8th Cir. 2010) (citation omitted). As the Eighth Circuit Court of Appeals
recently noted, "[W]e must not lose sight of the purpose of the [MVRA]," which is
"intended 'to assure that victims of a crime receive full restitution.'" *United States v.
Adetiloye*, 716 F.3d 1030, 1040 (8th Cir. 2013) (citation omitted).

The VWPA and MVRA are not the only statutes that provide authority for federal
courts to order restitution. *Miell*, 744 F.Supp.2d at 969 (citation omitted). Rather, 18
U.S.C. § 3563(b)(2) (The Probation Statute) "grants courts broad discretion to order
restitution as a condition of probation," and 18 U.S.C. § 3583(d) (The Supervised Release
Statute) makes that "grant applicable to supervised release." *United States v. Batson*,
608 F.3d 630, 632 (9th Cir. 2010) (citing 18 U.S.C. §§ 3563(b)(2), 3583(d)).

The Probation Statute, authorizes courts to "provide, as [a] further condition[] of
a sentence of probation . . . that the defendant . . . make restitution to a victim of the
offense under section 3556 (but not subject to the limitation of section 3663(a) or
3663A(c)(1)(A))." 18 U.S.C. § 3563(b)(2). In other words, restitution as a condition
of probation, is not subject to the limitations of the VWPA or MVRA.[6] Therefore, based

---

[6] Restitution is "confine[d] . . . to particular offenses" because of the limitations of the
VWPA and MVRA. *Batson*, 608 F.3d at 634. The limitation of the MVRA from which
restitution orders as conditions of probation or supervised release are exempted is the
limitation that the offense of conviction or the offense charged in a plea agreement be

on § 3563(b)(2), a district court is permitted to order restitution as a condition of probation for any criminal offense for which probation is properly imposed. In this case, § 3563(b)(2) does not apply as Weimer was sentenced to a term of imprisonment.

The Supervised Release Statute, 18 U.S.C. § 3583(d), provides in relevant part: "The court may order, as a further condition of supervised release, . . . any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . ." 18 U.S.C. § 3583(d); *see also Batson*, 608 F.3d at 635 ("The Supervised Release Statute, together with the Probation Statute, unambiguously authorizes federal courts to order restitution as a condition of supervised release for *any* criminal offense . . . for which supervised release is properly imposed."). Therefore, based on 18 U.S.C. § 3583(d), a district court is permitted to order restitution as a condition of supervised release for any criminal offense for which supervised release is properly imposed.

However, as was clearly explained by Catharine M. Goodwin, a consultant, writer, and instructor on federal restitution issues, Congress apparently only intended the so-called "condition-restitution" (*i.e.*, restitution as a discretionary condition of probation, or restitution as a discretionary condition of supervised release), "to be available where a sentence of restitution would not be available for offenses not listed in

---

> (i) A crime of violence, as defined in section 16; (ii) an offense against property under this title [Title 18], or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; (iii) an offense described in section 1365 (relating to tampering with consumer products); or (iv) an offense under section 670 (relating to theft of medical products).

18 U.S.C. § 3663A(c)(1)(A); *see also Batson*, 608 F.3d at 634 n.4.

a restitution statute." *Federal Criminal Restitution* § 4:7. Goodwin bolstered her opinion with the following:

> This is evident from the strong victim-favorable legislative intent of both the Victim and Witness Protection Act (VWPA) and the Mandatory Victims Restitution Act of 1996 (MVRA), making it unlikely that Congress would have intended the weaker, short-lived form of condition-restitution to be available as an alternative to the imposition of a sentence of restitution for those offenses it specifically chose to list in restitution sentences.

*Id*. In Goodwin's view, condition-restitution is a "back-up alternative" for certain offenses, such as non-Title 18 offenses, which are not listed under the VWPA or MVRA. *Id*. The Sentencing Guidelines' interpretation of the restitution statute supports Goodwin's understanding of "condition-restitution" as a "back-up alternative."[7]

Case law from the Eighth Circuit Court of Appeals also strengthens Goodwin's position on this issue. For example, in *United States v. Perry*, a jury convicted the defendant of willful income tax evasion in violation of 26 U.S.C. § 7201 for failing to

---

[7] Under U.S.S.G. § 5E1.1(a), the Guidelines provide that the court must:

> (1) enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § 1593, § 2248, § 2259, § 2264, § 2327, § 3663, or § 3663A, or 21 U.S.C. § 853(q); *or*

> (2) impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) *but otherwise meets the criteria for an order of restitution under that section*.

U.S.S.G. § 5E1.1(a) (emphasis added).

report his taxes and then concealing kickbacks that he received for four tax years. 714 F.3d 570, 573 (8th Cir. 2013). The district court imposed a sentence that included an order that the defendant pay restitution as a condition of supervised release in the amount of "$926,602.72, consisting of $578,226 in total tax deficiencies for the four tax years in question plus $348,376.75 in interest." *Id.* at 577. On appeal, the defendant made two contentions relevant to my discussion here: (1) the restitution order must be vacated because the VWPA and MVRA do not apply to Title 26 offenses; and (2) the district court lacked statutory authority to include $348,376.75 in interest in the restitution order. *Id.* The Eighth Circuit Court of Appeals disagreed with the defendant.

In rejecting the defendant's contentions, the appellate court explained that district courts have the discretionary authority from Congress to fashion a restitution order as "a condition of supervised release, without regard to whether the defendant committed an offense enumerated in §§ 3663(a)(1)(A) or 3663A(c)(1)." *Id.* The appellate court reasoned that the restitution order did not need to be vacated because "the district court made clear that restitution was being ordered as a condition of Perry's supervised release, not pursuant to the VWPA or the MVRA." *Id.* In addition, the district court did not abuse its discretion by including interest in the restitution order. This is because district courts are tasked with "'order[ing] restitution to each victim in the *full amount* of each victim's losses . . . .' 18 U.S.C. § 3664(f)(1)(A) . . ." and "[f]ederal tax law imposes interest on tax delinquencies to compensate the government for the time-value of its loss." *Id.* (citing 26 U.S.C. § 6601).

Unlike Perry's offense, Weimer's offense of conspiring to use fire to commit wire fraud is covered by Title 18 of the United States Code. *See* 18 U.S.C. § 1343. Therefore, the restitution statute applies to this arson related criminal offense. In *Perry*, the offense fell under Title 26, and thus, a sentence of restitution was not available pursuant to the MVRA. *See* 26 U.S.C. § 7201. Because restitution as a condition of supervised release

appears to be intended by Congress to be available only where a sentence of restitution would not be available for offenses not listed in the restitution statute, I decided to use the court's statutory authority to impose a sentence of restitution.[8] Further justifying that decision is the fact that a sentence of restitution is preferable to condition-restitution from the perspective of the victim here.[9] Also, unlike this case, condition-restitution has been imposed by a district court as an alternative where the court omitted a restitution order in the judgment for a Title 18 violation.[10] I turn to address the standard for determining whether restitution is owed to State Farm.

---

[8] For example, tax charges do not fall within the requirements for mandatory restitution under the MVRA if the charges, as in *Miell*, "are not crimes of violence, crimes against property, or crimes involving tampering with consumer products." *Miell*, 744 F.Supp.2d at 965 (citing 18 U.S.C. § 3663A(c)(1)). Nor would such charges "fall within the requirements for restitution under any other statute." *Id.* (citing 18 U.S.C. § 3663). As I explained in *Miell*, "Although there is no statutory provision for 'restitution' of tax losses, payment of delinquent taxes may be ordered as a condition of supervised release on tax offenses pursuant to 18 U.S.C. § 3583(d))." *Id.* at 965–66 (citation omitted).

[9] The disadvantage for condition restitution in this case is that State Farm's opportunity to be repaid its insurance premiums would expire with Weimer's term of supervision. *See* Federal Criminal Restitution § 4:7. By contrast, "a sentence of restitution can generally be enforced for at least 20 years after judgment" based on 18 U.S.C. §§ 3664(m) and 3613(b). *Id.* (citing 18 U.S.C. §§ 3664(m), 3613(b)).

[10] *See, e.g., Balentine*, 589 F.3d at 806–07 (affirming a district court's imposition of restitution as a condition of defendant's supervised release where defendant committed bank burglary in violation of 18 U.S.C. § 2113(a), but the district court omitted the restitution order from its sentence and entered a restitution order long after 18 U.S.C. § 3664(d)(5)'s timing requirement that a court issue a restitution order within 90 days of the defendant's sentencing).

### B. Standard for Determining Whether
### Restitution is Owed

Citing to *United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011), the Eighth Circuit Court of Appeals recently discussed the "parameters governing the district court's obligation to order restitution." *See United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012). According to the appellate court, an analysis under the MVRA, 18 U.S.C. 3663 *et seq.*, "includes first identifying the victims of the defendant's conduct and then determining the full amount of each victim's losses." *Id.* (citing *Frazier*, 651 F.3d at 903). In other words, awarding restitution in this case presents two issues: (1) whether State Farm is a "victim" entitled to mandatory restitution under the MVRA, and if so, (2) what is the proper amount of restitution to be awarded to State Farm. *See United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008) (addressing the same two issues in vacating the restitution portion of the district court's judgment). "The government has the burden of proof on both issues." *Id.*

### 1.    Is State Farm a Victim?

As instructed by the Eighth Circuit Court of Appeals, I begin "by identifying the victims of the defendant's conduct." *Frazier*, 651 F.3d at 903 (citing *Chalupnik*, 514 F.3d at 752)). The MVRA defines "victim" as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).

In this case, Weimer does not contest that her insurer, State Farm, was a victim of her conspiracy to commit arson in order to collect insurance proceeds. Indeed, State

Farm compensated Weimer for her alleged fire-related losses with $78,593.25. Therefore, based on the government's filings, the record, and the in-court proceedings to date, I find that the government met its burden of proving by a preponderance of the evidence that Weimer's criminal acts "directly and proximately harmed" State Farm. Thus, State Farm qualifies as a "victim" entitled to restitution under the MVRA.

### 2. What is the Full Amount of State Farm's Loss?

After identifying the victims, "the next step is to determine 'the full amount of each victim's losses.'" *Frazier*, 651 F.3d at 903 (citing to 18 U.S.C. § 3664(f)(1)(A); *Chalupnik*, 514 F.3d at 754). The amount of a victim's loss and the amount of a district court's restitution order "'must be based on the amount of loss *actually* caused by the defendant's offense.'" *Id.* at 903–04 (citation omitted). The MVRA gives me guidance as to the correct calculation of a restitution award. *See* 18 U.S.C. § 3663A(b). In the case of an offense resulting in a loss of a victim's property, as here, the victim is entitled to the return of the property, 18 U.S.C. § 3663A(b)(1)(A), or if the return of the property is "impossible, impracticable, or inadequate," the victim is entitled to the greater of the value of the property on the date of loss, or on the date of sentencing, less "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B). However, "the amount of restitution under the MVRA 'cannot exceed the actual, provable loss realized by the victims.'" *Alexander*, 679 F.3d at 731 (citing *Frazier*, 651 F.3d at 905).

I am supposed to "construe 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2005) (citations omitted). As the Second Circuit Court of Appeals explained in *United States v. Qurashi*,

> Although the same complexity does not inhere in value
> determinations where the property lost is cash, accounting for
> the time-value of money requires no less flexibility. If

sentencing courts are required to compensate victims for "the full amount of each victim's losses," there is no reason to exclude losses that result from the deprivation of the victim's ability to put its money to productive use. In light of the inherent difficulty of determining in the 'but for' world the earnings that would have resulted from the use of the wrongfully acquired funds, prejudgment interest stands in to provide a rough but fair approximation of such losses.

634 F.3d 699, 703 (2d Cir. 2011). In other words, although the value of the property in question (*i.e.*, the amount paid out to Weimer under the insurance policies) is readily ascertainable, the full amount of State Farm's loss should include interest.[11] Thus, it is

---

[11] In *The Economics of Crime and Punishment: Implications For Sentencing of Economic Crimes and New Technology Offenses*, 9 GEO. MASON L. REV. 503, 526–27 (2000), Professor Mark A. Cohen discusses the significance of "interest" as a "loss" at sentencing and in restitution orders. As Professor Cohen aptly wrote in his article,

Economic theory would tell us that interest is an important component of loss. The time-value of money is well-established in economics as being worthy of consideration in all areas of cost-benefit analysis and policy analysis in general. From the perspective of the victim, there is no doubt that foregone interest is a loss. Moreover, from the perspective of the potential offender who is deciding whether or not to engage in a fraudulent activity, the time value of money will certainly play a role. For example, an offender who defrauds victims out of $1 million and is able to hold that amount for several years before being sentenced will have earned (or been able to earn) hundreds of thousands of dollars in interest. The fact that this is not considered a loss for purposes of sentencing means that the offender has an incentive not to plead guilty and settle the case, since he has use of those resources for a longer period of time at no real

within my discretion to determine the "value" of State Farm's lost property under the MVRA. *Frazier*, 651 F.3d at 904; *see also United States v. DeRosier*, 501 F.3d 888, 897 (8th Cir. 2007) ("This Circuit has held that '[t]he district court has wide discretion in ordering restitution.'") (citations omitted).

Here, Weimer's PSIR provides that State Farm suffered an undisputed loss of $78,593.25 in insurance coverage paid for Weimer's alleged loss, which State Farm is entitled to recover from Weimer. However, the amount of restitution referred to in the PSIR is understated because it does not include interest. In *Alexander*, the Eighth Circuit Court of Appeals made clear that "although interest costs are to be excluded for purposes of the *loss* amount, *see* U.S.S.G. § 2B1.1, comment. (n.3(D)(i)), we have previously affirmed a district court's *restitution* amount that included interest and other foreclosure expenses." 679 F.3d at 731 (citing *United States v. Statman*, 604 F.3d 529, 536–38 (8th Cir. 2010)).[12] The appellate court in *Alexander* "decline[d] to find that interest payments

---

cost to himself. Of course, interest may be charged in restitution orders at the discretion of the judge. Therefore, to that extent that restitution with interest is ultimately ordered, some of the incentive for delay is reduced.

[12] In *United States v. Catherine*, the Ninth Circuit Court of Appeals explained the reason why "restitution can include prejudgment interest" under the VWPA, but the Sentencing Guidelines do not include interest when considering a victim's "loss": "The different method of calculating loss in each case is due to the different purposes behind the two statutes. A defendant's culpability will not always equal the victim's injury." 55 F.3d 1462, 1465 (9th Cir. 1995). In *Catherine*, the Ninth Circuit Court of Appeals refers to a deleted provision of the Sentencing Guidelines, *i.e.*, U.S.S.G. § 2F1.1, comment. (n. 7), which provided that loss "does not, for example, include interest the victim could have earned on such funds had the offense not occurred." *Id.* The current provision of the Sentencing Guidelines referred to by the Eighth Circuit Court of Appeals in *Alexander* establishes the same proposition and more: "Loss shall not include . . . [i]nterest of any

and other reasonably foreseeable expenses incurred by HUD were not compensable under the MVRA." *Id*.

Senior District Judge Robert W. Pratt, from my sister district, the Southern District of Iowa, went so far as to hold that under the MVRA he was "required to include in [the Court's] restitution order the interest that Shelby County State Bank paid out to its customers, as a result of Defendant's actions." *United States v. Johannsen*, 36 F.Supp.2d 1135, 1136 (S.D. Iowa 1999) (citation omitted). There, the defendant committed bank fraud, in violation of 18 U.S.C. § 1344. *Id*. at 1135. Similar to this case, the Probation Officer in Johannsen did not include a calculated interest amount in her recommendation for restitution, and "left this issue to be determined by the Court."[13] *Id*. In deciding that the MVRA mandated that the order of restitution include interest, Judge Pratt wrote,

> While the specific issue of whether mandating interest as a part of the overall award of restitution is required pursuant to MVRA has not been addressed by this Circuit, the Court believes such a finding is consistent with other Eighth Circuit opinions interpreting the MVRA. *See United States v.*

---

kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return or other similar costs." *See* U.S.S.G. § 2B1.1, comment. (n.3(D)(i)). Relatedly, in *Miell*, I awarded restitution in an amount that "exceed[ed] the amount of loss from the insurance fraud scheme that I found for purposes of sentencing." 744 F.Supp.2d at 967. In doing so, I found that the difference was "of no moment" based on *Lange*, 592 F.3d at 907, which provides, "Although the gross amount of theft [or fraud] loss for sentencing purposes and victim loss for restitution purposes are often calculated in the same manner, . . . the two determinations serve different purposes and thus may differ depending on the relevant facts." *Id*. at 967–68. As I explained in *Miell*, the larger amount that I awarded for restitution "appear[ed] to include *interest*, attorneys fees, and other costs." *Id*.at 968 (emphasis added).

[13] By contrast to *Johannsen*, in this case there was no calculated interest amount in the Victim Impact Statement portion of the PSIR. *See id*. at 1135. I calculate the appropriate amount of prejudgment interest based on State Farm's actual losses below.

> *Williams*, 128 F.3d 1239, 1241 (8th Cir. 1997) ("Before the
> MVRA became effective, the Victim Witness Protection Act
> (VWPA) authorized but did not compel district courts to order
> restitution . . . the MVRA makes restitution mandatory for
> certain crimes . . . committed by fraud."); *see also United
> States v. Rea*, 169 F.3d 1111, 1114 (8th Cir. 1999) (which
> found that the MVRA requires a defendant to make restitution
> for the "full amount" of a victim's loss).

*Id*. at 1136.  An explanatory footnote follows the above cited text indicating that, although
Rea did not involve interest amounts, Judge Pratt "reads the Eighth Circuit's use of the
term 'full amount' to be inclusive of interest." *Id*. at 1136 n.6.  I agree with Judge Pratt's
interpretation.  Also, I find that the "full amount of each victim's losses" provision under
the MVRA, 18 U.S.C. § 3664(f)(1)(A), justifies including interest in a restitution order.
*See* 18 U.S.C. § 3664(f)(1)(A) ("[T]he court shall order restitution to each victim in the
full amount of each victim's losses as determined by the court . . ."); *see also United
States v. Dean*, 949 F.Supp. 782, 784 (D. Or. 1996), *aff'd*, 146 F.3d 1141 (9th Cir.
1998), *cert denied*, 525 U.S. 975 (1998) ("[T]he MVRA requires that the court impose
'full' restitution, plus interest, for certain offenses regardless of the financial condition
of the defendant.").  In my opinion, $78,593.25 does not represent the "full amount" of
State Farm's losses as that figure does not include interest.  Accordingly, I find that
$78,593.25, plus prejudgment interest, is owed to State Farm for the full amount of State
Farm's losses.  Below, I summarize the relevant case law on the issue of imposing pre-
and postjudgment interest on restitution orders.  In doing so, I explain my rationale for
imposing prejudgment interest.  Lastly, I discuss how I calculated the interest that
Weimer owes.

### C. Imposition of Pre- and Postjudgment
### Interest

The MVRA and its precursor, the VWPA, are silent on the issue of whether a restitution order should include interest as an item of restitution. However, courts have held that, in imposing restitution, a district court may include both pre- and postjudgment interest under the VWPA and the MVRA.

### 1. Pre- and Postjudgment Interest under the VWPA

Among the circuit courts that have addressed the issue, a majority have held that it is proper to include prejudgment interest in a restitution award under the VWPA. For example, in *United States v. Smith*, the Ninth Circuit Court of Appeals upheld the district court's inclusion of prejudgment interest on a restitution order for a defendant who was convicted of numerous counts of conspiracy and bank fraud. 944 F.2d 618, 626 (9th Cir. 1991). In *Smith*, the appellate court asserted that the court had "repeatedly held that [the VWPA] authorizes restitution for a victim's 'actual losses.'" *Id.* (citation omitted). Because "[f]oregone interest is one aspect of the victim's actual loss," the appellate court reasoned that it "may be part of the victim's compensation." *Id.* (citation omitted).

In addition, in *United States v. Patty*, the Tenth Circuit Court of Appeals, like the Ninth Circuit Court of Appeals in *Smith*, held that "prejudgment interest is properly included in a VWPA restitution award." 992 F.2d 1045, 1050 (10th Cir. 1993). In reaching that holding, the Tenth Circuit Court of Appeals cited to *Smith*, 944 F.2d at 626, from the Ninth Circuit Court of Appeals, and *Rochester*, 898 F.2d at 982–83, from the Fifth Circuit Court of Appeals, asserting that "[t]wo circuits have applied the *Rodgers* test to determine whether it is proper to include prejudgment interest in a restitution award under the VWPA, and both have concluded that the purpose of the VWPA is best served

by the inclusion of prejudgment interest."[14]  *Id*.  The Tenth Circuit Court of Appeals agreed with the reasoning of the circuit courts in *Smith* and *Rochester*, and made clear that, pursuant to the VWPA, courts may properly impose prejudgment interest.  *Id*. However, the Tenth Circuit Court of Appeals remanded the restitution order for the defendant convicted of fraud for the sentencing court to clarify which portion of the restitution award "constituted attorneys fees and which portion constituted prejudgment interest" and to reconsider the "ability to pay" issue.  *Id*.

Also, the Third Circuit Court of Appeals in *Government of Virgin Islands v. Davis*, affirmed the district court's order "with respect to the inclusion of interest."  43 F.3d 41,

---

[14] As the United States Supreme Court explained in *Rodgers v. United States*, silence in a statute regarding the permissibility or impermissibility of interest on penalties need not be interpreted "as manifesting an unequivocal congressional purpose that the obligation shall not bear interest."  332 U.S. 371, 373 (1947).  Rather, "in the absence of an unequivocal prohibition of interest on such obligations," the Supreme Court "has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court."  *Id*.  The Supreme Court in *Rodgers* applied the above-mentioned "test" to the Agricultural Adjustment Act of 1938.  There, the government sought to recover money penalties imposed pursuant to the Act because the defendant marketed cotton in excess of his quota.  *Id*. at 372.  The Supreme Court reasoned that because the Act's purpose was "not to raise revenue for the Government's financial advantage" but rather "to deter farmers from planting and marketing more than their quotas," interest was *improperly* imposed.  *Id*. at 374.  "We are unable to say that it would be consistent with the congressional purpose for the courts to add interest to these very substantial penalties already imposed upon non-cooperating farmers," wrote the Supreme Court.  *Id*. at 376.  Unlike the Agricultural Adjustment Act, which sought only to deter prohibited conduct, the VWPA's purpose was "to ensure that wrongdoers, to the degree possible, make their victims whole."  *See Patty*, 992 F.2d at 1050 (citations omitted).  Similarly, the MVRA is "intended 'to assure that victims of a crime receive full restitution.'"  *Adetiloye*, 716 F.3d at 1040.  Yet, to reiterate the statutes' two significant differences, under the MVRA courts cannot consider the defendant's economic circumstances, and the MVRA mandates restitution.  *See* 18 U.S.C. § 3664(f)(1)(A); *see also Johannsen*, 36 F.Supp.2d at 1136.

44 (3d Cir. 1994). The appellate court held that, pursuant to the VWPA, the district court's inclusion of prejudgment interest in a restitution order for a defendant convicted of conspiracy to defraud, forgery, and perjury was "proper to effect full compensation." *Id*. at 47. The appellate court reasoned that "[l]ost interest translates into lost opportunities, as it reflects the victim's inability to use his or her money for a productive purpose." *Id*.

Finally, in *United States v. Rochester*, the Fifth Circuit Court of Appeals went even further than the cases discussed above by explicitly holding that, under the appellate court's interpretation of *Rodgers v. United States*, 332 U.S. 371 (1947), "*both pre- and postjudgment interest* may be awarded under the VWPA." 898 F.2d 971, 983 (5th Cir. 1990) (emphasis added). By way of its discussion on interest, the appellate court referred to *Rodgers* and *United States v. RICO Industries, Inc.*, 854 F.2d 710 (5th Cir. 1988), noting that unlike restitution under the Federal Probation Act in *RICO*, or the Agriculture Adjustment Act in *Rodgers*, restitution imposed under the VWPA "is not in the nature of a fine." *Id*. Rather, the VWPA's purpose is "'to ensure that wrongdoers, to the degree possible, make their victims whole,'" and that "purpose is effectuated by the payment of the fine to the victim rather than the Government." *Id*. (citation omitted). The appellate court concluded by asserting that the VWPA's purpose "would be served by the inclusion of interest in the judgment." *Id*.

## 2.    *Pre- and Postjudgment Interest under the MVRA*

Several circuit courts have also decided that the MVRA authorizes the inclusion of prejudgment interest in a restitution award. For example, the Seventh Circuit Court of Appeals in *United States v. Shepard*, held that the restitution award for the victim, a defrauded 87-year-old woman, should include prejudgment interest. 269 F.3d 884, 886

(7th Cir. 2001).[15]  In *Shepard*, two defendants took money from the victim's interest-bearing account on false pretenses, and one defendant, convicted of mail fraud and money laundering, appealed his restitution amount.  Because the victim's money came from an interest-bearing account,[16] the appellate court reasoned that the "return of the same number of dollars" that the defendants took from the victim's account "would be 'inadequate' for purposes of [the MVRA]."  *Id.*  According to the appellate court in *Shepard*, "Restitution should include interest to make up for the loss of the funds' capacity to grow."  *Id.* (citations omitted).

The First Circuit Court of Appeals in *United States v. Corey* affirmed the district court's award of restitution, which included prejudgment interest, for a defendant convicted of bank fraud under 18 U.S.C. § 1344.  77 Fed.Appx. 7, 12 (1st Cir. 2003). The appellate court reasoned, "The MVRA aims to provide victims with full and fair compensation, rendering the return of the principal loan amount [in this case] inadequate because '[f]oregone interest is one aspect of the victim's actual loss.'"  *Id.* (citing *Smith*, 944 F.2d at 626).  The appellate court continued by asserting, "In our view, placing prejudgment interest within the category of potentially recoverable losses in a restitution award is consistent with the MVRA."  *Id.*  In the words of the appellate court,

---

[15] The Seventh Circuit Court of Appeals vacated the district court's restitution award on grounds not pertaining to interest: (1) because the restitution of $92,000 was the "starting point," on remand, the district court was required to evaluate the possibility that the defendants took some of the victim's "physical assets as well as her financial assets"; and (2) pursuant to § 3663A(b)(1)(B)(ii), the district court needed to offset the value that was returned to the victim by the defendants based on the defendants' improvements to the victim's home to reach the appropriate restitution amount.  *Id.* at 887–88.

[16] *But see Gordon*, 393 F.3d at 1059 (finding district court properly awarded prejudgment interest for some embezzled cash and liquidated shares, even if the victim "would not necessarily have placed its stock proceeds in an interest bearing account.").

> Interest is the bread and butter of the business of any lending institution. "Lost interest translates into lost opportunities, as it reflects the victim's inability to use his or her money for productive purposes." *Davis*, 43 F.3d at 47. When Farm Credit [the victim lending institution], relying upon Corey's [the defendant] falsified application, loaned money to Corey, it presumably made a considered judgment about the optimal allocation of its resources, thereby passing up other revenue-generating enterprises.

*Id*. Thus, the appellate court held that there was sufficient evidence for the district court to find that the victim's lost interest was directly related to the defendant's fraud. *Id*.

The Ninth Circuit Court of Appeals, in interpreting the MVRA, affirmed in part a district court's restitution order to require a defendant to pay prejudgment interest on some embezzled cash and shares of companies where the interest reflected the victimized employer's "actual loss." *Gordon*, 393 F.3d at 1059. In reaching that decision, the Ninth Circuit Court of Appeals distinguished between embezzled securities that were liquidated by the employer versus the embezzled securities that were not liquidated by the employer. In doing so, the appellate court decided that the district court only appropriately included prejudgment interest for the embezzled securities that were liquidated. According to the appellate court, the district court's award of prejudgment interest for the embezzled stocks that were not liquidated, and did not constitute an "actual loss," went beyond making the victimized corporation whole and was "therefore unauthorized under the MVRA." *Id*. at 1060 (citing *Smith*, 944 F.2d at 626).

The Second Circuit Court of Appeals in *Qurashi*, also affirmed a district court's award of prejudgment interest in a restitution order where the defendant committed insurance fraud by twice faking his brother's death to collect millions of dollars in life

insurance proceeds. 634 F.3d at 706.[17] Analogous to the reasoning of the circuit courts in *Shepard*, *Corey*, and *Gordon*, the appellate court in *Qurashi* reasoned that the "MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation 'in the full amount of each victim's losses.'" *Id.* at 704 (citing 18 U.S.C. § 3664(f)(1)(A)). Based on that understanding, the Second Circuit Court of Appeals decided, "The district court therefore acted within its discretion in awarding prejudgment interest on funds that it determined [the victims] would have otherwise put to productive use." *Id.*

In *Qurashi*, the appellate court bolstered its decision by citing to decisions of the court's sister circuits that "approved the inclusion of prejudgment interest in restitution orders" pursuant to the VWPA and the MVRA. *Id.* After providing a string citation of such cases, which included *Gordon*, 393 F.3d at 1059, the Second Circuit Court of Appeals focused its attention on the reasoning of the Ninth Circuit Court of Appeals in *Gordon*. *Id.* The Second Circuit Court of Appeals began by writing, "*Gordon* sensibly suggests a rule that prejudgment interest be awarded unless evidence indicates the victim would not have put the funds to productive use." *Id.* After summarizing the holding of the Ninth Circuit Court of Appeals, the Second Circuit Court of Appeals continued:

> We need not, in the case before us, definitively opine as to when a district court's inclusion of prejudgment interest would constitute an abuse of discretion. It is plain to us that, in the absence of evidence that New York Life and MetLife

---

[17] The Second Circuit Court of Appeals affirmed the district court's judgment, but remanded the district court's decision "for the limited purpose of allowing the district court to amend the statement of reasons to correctly reflect or otherwise account for the parties' stipulation" as to a Sentencing Guidelines offense level and range. *Id.*

> [the victim insurers] would not have put the money at issue to productive use, no such abuse occurred here.

*Id*.  These cases, *i.e.*, *Shepard*, *Corey*, *Gordon*, and *Qurashi*, suggest that courts generally agree that prejudgment interest should be included in restitution orders.[18]

Fewer courts, however, have explicitly addressed whether to include postjudgment interest in restitution orders pursuant to the MVRA.  The United States District Court for the Southern District of New York in *United States v. Jaffe* ordered that a defendant pay restitution pursuant to the MVRA, and held that "interest shall run on the Bank's net loss at the rate of nine per cent per annum from the date of loss to the date of sentence, December 5, 2003, yielding $18,154,242.77, and at the same rate thereafter." 314 F.Supp.2d 216, 223–24 (S.D.N.Y. 2004).[19]  In *Jaffe*, the defendant pleaded guilty to an information charging him with violating 18 U.S.C. § 1014, for knowingly making false

---

[18] Catharine M. Goodwin's work supports this assertion:

> Sometimes the issue is whether the restitution amount should include the value of interest accrued on the loss, particularly prior to the sentencing (i.e. pre-judgment interest).  *The courts generally agree that such interest should be included in the computation of restitution owed the victim at sentencing*.  It is considered a part of the loss caused to the victim by the defendant's offense conduct . . .

> *Post-MVRA courts have generally included pre-judgment interest as part of the computation of the full amount of the victim's loss, as required by statute*.  This is true even though interest is specifically excluded from the computation of economic loss under the Guidelines . . .

Federal Criminal Restitution § 7:9 (emphasis added).

[19] On appeal, the Second Circuit Court of Appeals affirmed the district court's decision in *Jaffe* without taking up the issue of prejudgment or postjudgment interest.  *See United States v. Jaffe*, 417 F.3d 259, 267 (2nd Cir. 2005).

statements on a loan application to influence the action of an FDIC-insured bank. *Id*. at 218. The defendant objected to the "nine percent rate, both pre- and post-judgment." *Id*. at 224. In ruling against the defendant, the district court, like the circuit courts mentioned above, explained that restitution "is intended to return to the victim that which was wrongfully wrested from him and, since [the victim] was deprived of the use and benefit of [the victim's] funds, restitution should reflect that loss as well." *Id*.

### 3. Analysis

Similar to the victims' lost interest in *Davis* and *Corey*, State Farm's lost interest "translates into lost opportunities." *See Corey*, 77 Fed.Appx at 12; *Davis*, 43 F.3d at 47. While I know State Farm lost $78,593.25 in insurance proceeds to Weimer, State Farm did not indicate what would have happened to that money, absent Weimer's fraudulent conduct. Nor was I given documentation that the insurance proceeds of State Farm were from specific investment accounts whose gains and losses between the date of Weimer's fraud and her sentencing were tracked. It is, however, plain to me that State Farm would have used the money it gave to Weimer for a productive purpose. *See Qurashi*, 634 F.3d at 702; *see also Patty*, 922 F.2d at 1050 ("Prejudgment interest reflects the victim's loss due to his inability to use the money for a productive purpose, and is therefore necessary to make the victim whole."). Presumably, the insurance company would have used the funds it gave to Weimer in 2009, 2010, and 2011 to pay off other persons insured by State Farm, or deposited or reinvested the money. *See Corey*, 77 Fed.Appx. at 12. Accordingly, because foregone interest is one aspect of the insurance company's actual loss in this case, it should be part of State Farm's compensation, and it is part of my calculation for restitution below. *See id*.

### D. Calculating the Appropriate Interest
### Award

At last, I turn to determine the appropriate prejudgment interest award, which reflects a reasonable interest rate, to add to Weimer's restitution order.

### 1.     The Amount Subject to the Award of Interest

Prejudgment interest is to be awarded on the money Weimer received from State Farm.  As noted in Weimer's PSIR, after the defendant submitted her falsified insurance claims for fire-related losses, the defendant was paid $78,593.25 by the victim.  The insurance company made the following payments to Weimer: (1) $33,700.53 on March 30, 2009; (2) $3,900 on May 8, 2009; (3) $3,900 on May 26, 2010; and (4) $37,092.72 on February 21, 2011.  After receiving the checks, Weimer presented the checks to her bank to deposit them into her bank account or for cash.  Thus, the losses incurred by State Farm were directly related to Weimer's fraudulent conduct, and $78,593.25 is subject to the award of interest.

### 2.     Date From Which to Calculate Interest

Prejudgment interest on the insurance proceeds stolen by Weimer should be separately calculated based on the dates that State Farm paid the four separate checks to Weimer.  *See United States v. Qurashi*, No. 2:05-cr-00498 (E.D.N.Y. Sept. 30, 2009), docket nos. 102, 113 (district court adopts magistrate judge's Report and Recommendation, in which magistrate held "prejudgment interest should be calculated for the periods beginning on the dates on which [the victim insurers] paid Defendant on the [insurance policies]" for the restitution order); *see also Kirton v. Northwestern Mut. Life Ins.*, No. 00-CV-7646, 2006 WL 3051772, *7 (E.D.N.Y. Oct. 24, 2006) (in a civil judgment, the district court awarded prejudgment interest on the insurance proceeds based on the date the insurance company paid insurance proceeds to the defendant).

Weimer made the fraudulent insurance claim on March 2, 2009, the same day that Weimer's rental property burned down.  However, Weimer received her first payment

from State Farm on March 30, 2009; her second payment on May 8, 2009; her third payment on May 26, 2010; and her fourth payment on February 21, 2011. Weimer was sentenced on November 25, 2014. Thus, I conclude that the time between the dates she received insurance payments until her sentencing on November 25, 2014, should be included in the calculation of the prejudgment interest owed to State Farm.

### 3. The Rate At Which To Calculate Interest

My survey of the relevant case law above has revealed different methods for calculating prejudgment interest. The Ninth Circuit Court of Appeals, for instance, put forth this method of calculating a prejudgment interest rate in *United States v. Gordon* based on the Treasury Bill rate:

> Under federal law the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate. *See Blanton v. Anzalone (II)*, 813 F.2d 1574, 1576 (9th Cir.1987); *Blanton v. Anzalone (I)*, 760 F.2d 989, 992–93 (9th Cir.1985). We have held that the applicable prejudgment interest rate is the one in effect immediately *prior* to the date of the wrongful conduct which caused a plaintiff's loss. *See Anzalone (I)*, 760 F.2d at 992–93.

393 F.3d at 1058 n.12.

Whereas the United States District Court for the Southern District of New York in *Jaffe* used a different method of calculating an interest rate for orders of restitution based on New York's statutory rate of nine percent:

> Federal law does not provide an interest rate for orders of restitution. Were restitution to be considered a fine, Jaffe [the defendant] would have had to pay two percent per annum. *See* 18 U.S.C. § 3612(f). Restitution, however, is intended to return to the victim that which was wrongfully wrested from him and, since he was deprived of the use and benefit of

> his funds, restitution should reflect that loss as well. Accordingly, the statutory interest rate used for civil judgments in both federal and state courts in this district provides a more suitable remedial base, that is, nine percent. *See* N.Y. C.P.L.R. § 5004.

314 F.Supp.2d at 224. For the reasons discussed below, I am awarding prejudgment interest at the Treasury Bill rate, pursuant to 28 U.S.C. § 1961, in line with *Gordon*.

The Treasury Bill rate applied in *Gordon* to calculate the amount of prejudgment interest is the rate often used by federal courts in criminal and civil judgments. *See, e.g., Gordon*, 393 F.3d at 1058 n.12 ("Under federal law the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate.") (citation omitted); *see also Kirton*, 2006 WL 3051772 at *8–*9 ("The rationale for using a rate adopted by Congress is self-evident: 'it is reasonable to accept the considered judgment of Congress as to a fair interest rate.'") (citation omitted); *Mennen v. Easter Stores*, 951 F.Supp.838, 863 n.28 (N.D. Iowa 1997) (noting that "the district court may grant prejudgment interest at a rate which it determines to be fair and equitable," and determining prejudgment interest based on the "current 52-week U.S. Treasury bill rate, which [was] 5.45 percent" and interest was compounded annually) (citations omitted).

Here, based on the Treasury Bill rate prevailing on the dates State Farm paid insurance proceeds to Weimer (*i.e.*, March 30, 2009; May 8, 2009; May 26, 2010; and February 21, 2011) to the date of Weimer's sentencing (*i.e.*, November 25, 2014), I find that $903.66 accrued in interest income for State Farm.[20] Postjudgment interest will also

---

[20] Based on the 52-week U.S. Treasury bill rate, I calculated interest on State Farm's lost income to Weimer. As to the first payment, State Farm's lost interest income from March 30, 2009 to November 25, 2014, was $558.91. This calculation assumes the

begin accruing on the date of the entry of this order until Weimer pays restitution in full, and postjudgment interest shall be determined by using the Treasury Bill rate prevailing on that date pursuant to 28 U.S.C. § 1961.

### E. Payment Schedule

Based on the plain language of § 3663A, a restitution order "shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3663A(d); *see also* 18 U.S.C.

---

original payment was invested in a 52-week Treasury Bill on March 30, 2009 and subsequently reinvested after each 52-week period through November 25, 2014, on the following dates and rates: (1) 3/30/2009: 0.57%; (2) 3/29/2010: 0.40%; (3) 3/28/2011; 0.28%; (4) 3/26/2012; 0.18%; (5) 3/25/2013; 0.13%; (6) 3/24/2014; 0.13%. As to the second payment, State Farm's lost interest income from May 8, 2009 to November 25, 2014, was $56.74. This calculation assumes the original payment was invested in a 52-week Treasury Bill on May 8, 2009, and subsequently reinvested after each 52-week period through November 25, 2014, on the following dates and rates: (1) 5/8/2009; 0.55%; (2) 5/7/2010; 0.38%; (3) 5/6/2011; 0.17%; (4) 5/4/2012; 0.18%; (5) 5/3/2013; 0.11%; (6) 5/2/2014; 0.10%. As to the third payment, State Farm's lost interest income from May 26, 2010 to November 25, 2014, was $33.31. This calculation assumes the original payment was invested in a 52-week Treasury Bill on May 26, 2010, and subsequently reinvested after each 52-week period through November 25, 2014 on the following dates and rates: (1) 5/26/10; 0.35%; (2) 5/25/2011; 0.17%; (3) 5/23/2012; 0.19%; (4) 5/22/2013; 0.10%; (5) 5/21/2014; 0.08%. As to the fourth payment, State Farm's lost interest income from February 21, 2011 to November 25, 2014 was $254.73. This calculation assumes the original payment was invested in a 52-week Treasury Bill on February 21, 2011 and subsequently reinvested after each 52-week period through November 25, 2014 on the following dates and rates: (1) 2/21/2011; 0.27%; (2) 2/20/2012; 0.17%; (3) 2/18/2013; 0.16%; (4) 2/17/2014; 0.11%. At Weimer's sentencing hearing State Farm provided a prejudgment interest calculation "based upon 5% simple interest on money due under Iowa Code § 535.2(1)(g) from the date of each payment." For the reasons discussed above, I find this calculation to be inconsistent with the weight of federal authority. Like the Ninth Circuit Court of Appeals in *Gordon*, I apply the Treasury Bill Rate, pursuant to 28 U.S.C. § 1961, to reach the correct amount of prejudgment interest owed by Weimer. 393 F.3d at 1058 n.12.

§ 3664; *Stout*, 597 F.Supp.2d at 967 ("Section 3664 sets forth the procedures for ordering restitution."). I analyze the factors set forth under 18 U.S.C. § 3664(f)(2) to determine Weimer's payment schedule for restitution, such as "the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled"; "projected earnings and other income of the defendant"; and "any financial obligations of the defendant, including obligations to dependents." 18 U.S.C. § 3664(f)(2) (noting that a court's restitution order may direct the defendant to make a lump-sum payment or periodic payments). "Although a defendant's economic circumstances are not relevant to the determination of the *amount* of restitution, they are relevant to the *manner of payment* of restitution." *Miell*, 744 F.Supp.2d at 969 (citations omitted).

First, as to Weimer's financial assets, I find that Weimer has substantial financial resources from which to pay restitution. Indeed, Weimer has financial wealth with a total net worth of $1,048,953.99. *See id.* (imposing restitution where defendant had considerable financial wealth, even though defendant had substantial financial obligations based on a civil case and the defendant's bankruptcy). The probation officer notes in Weimer's PSIR, "[I]t appears the defendant has the ability to pay a financial penalty."

Second, as to Weimer's future projected cash flow, Weimer's monthly income consists of business income from her rental properties and contract income (*i.e.*, $13,625.00); social security income for herself (*i.e.*, $1,062.00); and social security income for her adopted son, Anthony Weimer (*i.e.*, $628.00). Added together, Weimer has a total monthly income of $15,369.00. However, Weimer will be serving a 120-month prison sentence, and therefore, she will have no income other than what she earns through her prison account. It is unlikely, based on Weimer's age (*i.e.*, 67 years old), that she will be able to become gainfully employed after her release from incarceration.

Third, as to Weimer's financial obligations, the present financial obligations that Weimer confronts concern a dependent. Weimer takes care of her 38 year old son,

Danny Koenig, who has cerebral palsy. According to Weimer's PSIR, "The defendant cares daily for Danny by helping him walk, cooking for him, doing laundry, and transporting him to medical appointments." However, Weimer "is making arrangements to have someone care for Danny" because she anticipates being incarcerated for her criminal conduct. I am unaware of any civil suit or administrative action that would stand in the way of restitution by giving State Farm double recovery or a windfall. *United States v. Louper-Morris*, 672 F.3d 539, 566 (8th Cir. 2012) ("[T]he MVRA does not allow victims to obtain double recovery or a windfall through restitution.") (citation omitted). Weimer also has not filed for bankruptcy.

Finally, Weimer's counsel did not object to my decision to impose interest on restitution at the November 3, 2014, hearing or later. Nor has Weimer's counsel argued that Weimer needs a specific arrangement to satisfy the restitution judgment, or is unable to pay interest. Therefore, I order payment of restitution on Count 1 in the amount of $79,496.91, which includes prejudgment interest accrued to November 25, 2014, and shall be paid to State Farm in one lump sum. *See* 18 U.S.C. § 3664(f)(3)(A) (authorizing, *inter alia*, lump-sum payment of restitution). My rationale for this schedule is based on Weimer's cash on hand, the value of her properties, and monthly income which are all available sources for her lump sum payment to State Farm.

## IV.    CONCLUSION

At Weimer's earlier scheduled sentencing hearing on November 3, 2014, I put the parties on notice of the restitution issues that I intended to address in this order and my tentative stance on the issues, and I provided the parties an opportunity to file citations to authorities or briefing on these issues. Since then, nothing has been filed on these issues by either party.

For the reasons set forth above, I order that prejudgment interest be added on the probation officer's loss calculation to result in a restitution award of $79,496.91 for State Farm. This award is limited to State Farm's "provable actual loss." *See Chalupnik*, 514 F.3d at 754 (noting restitution is limited to "the victim's provable actual loss"). Upon the foregoing, Weimer is ordered to pay restitution in the amount of $79,496.91, in a lump sum, due and payable immediately as restitution to State Farm. [21] *See Miell*, 744 F.Supp.2d at 970 (ordering defendant to pay restitution in a "lump sum"). As indicated above, postjudgment interest will begin accruing on the date of the entry of this order until Weimer pays restitution in full.

**IT IS SO ORDERED.**

**DATED** this 25th day of November, 2014.

*Mark W. Bennett*

_____

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[21] On November 3, 2014, I requested the government to advise State Farm of the effect of 18 U.S.C. § 3664(m)(1)(B) of the MVRA, which, at the request of the victim, the clerk of court must issue an "abstract of judgment" as a lien on Weimer's property. 18 U.S.C. § 3664(m)(1)(B); *see also United States v. Gall*, 1998 WL 563850, *1 (D.Conn. July 7, 1998) (Order) ("Pursuant to § 3664(m)(B) [sic], restitution orders may be converted into enforceable civil judgments."). This is particularly important in light of the fact that, based on Weimer's PSIR, she has a five-bedroom ranch style home on a 20 acre acreage of land that is listed for sale for $250,000.00. An order of restitution pursuant to the MVRA "is a lien in favor of the United States" on Weimer's property and her rights to property, including her residence, which "arises on the entry of the judgment." *See* 18 U.S.C. § 3613(c). As 18 U.S.C. § 3613(f) provides: "(f) Applicability to order of restitution.--In accordance with section 3664(m)(1)(A) of this title, all provisions of this section [18 U.S.C. § 3613] are available to the United States for the enforcement of an order of restitution." 18 U.S.C. § 3613(f).